Thank you, Your Honor. At Pleas of the Court, I am Robin Koch. I'm counsel for Appellant E.W. The case comes to you from an order of the District Court granting the summary judgment motion of the defendant deputy. The Court's opinion was cryptic. Its holdings were that, as a matter of law, handcuffing the plaintiff could not have constituted excessive force, and in any event, the deputy would be entitled to qualified immunity. However, on this record, the jury, quite reasonably, could have held that handcuffing the diminutive, compliant, 14-year-old girl... How long was she handcuffed? Two minutes, Your Honor. Two minutes? According to the deputy, and I don't dispute it, but... There's no evidence in the record that she had any injury? No, sir. No, Your Honor. There isn't? There is not. When did she start crying after the... She did start crying after she was handcuffed? I think the evidence is that she began crying immediately after she was handcuffed. The record isn't clear as to when she stopped crying. The evidence is that the deputy handcuffed her, she burst into tears, said, I don't want to go to jail, I'm sorry, and at that point they said, okay, so they took off the cuffs and that was pretty much it. So your claim of excessive force, if I understand it correctly, is no injury, no physical injury from it, but the fact of handcuffing? Precisely. Thank you, Your Honor. The record also, I think, would establish not only that this was clearly a violation of the Fourth Amendment's prohibition on excessive force, but also it was sufficiently clear that any hypothetical, reasonable officer in the deputy's shoes would have known better. I'll start, if I might, with the Fourth Amendment analysis, which is... Is that the standard? Would have known better or is clearly established? Clearly established. Shouldn't have languished this there because that's kind of important. The language in the case is that the violation has to be established with sufficient clarity that a reasonable law enforcement officer in the defendant's shoes would have realized the conduct was prohibited. And where is the source for that? That, I mean, what I would do is just look at the Supreme Court of this circuit or can you look anywhere else? Well, of course, Your Honor, you can look to find what you think is the best law. Oh, no. But we've got defined places to look and very specifically what we can do there. Well, I didn't mean to exclude the Supreme Court for that. You can't. Of course not. We know the Supreme Court and we know if it's the circuit law that applies. Can we look anywhere else? It appears to me I'm not sure you can. Well, I don't know of any law to the contrary in this circuit. I think the standard for qualified immunity is pretty well defined. I don't know that there's much- What makes it clearly established in this circuit? What makes, oh, you mean the Fourth Amendment violation clearly established here? Okay. Well, the Supreme Court precedent, which lays down the applicable standard, said it's an objectively reasonable standard. And you look at three criteria. First, you look at the severity of the underlying offense. Secondly, you look at whether the suspect presents a risk of violence, of harm to the arresting officer or to others. And thirdly, you look at what I call the sort of fight or flight factor, whether the suspect is resisting or presents a risk of escape. That's the analysis which has been in existence since the Supreme Court laid it down in the 80s. And I would, if I might, just sort of walk through it under the relatively undisputed facts in this case. The offense occurred on January 9th. The district court was mistaken in saying it was the 7th. It was the 9th. And the incident was an altercation on the school bus involving two 5th grade girls who were both kicked off the bus. I thought it was a 5th and a 3rd. Is that correct? Your Honor, I thought it was two 5th graders. I thought it was she's in the 5th grade and the other girl on the bus was a 3rd grader, but I could be wrong. Well, I'm embarrassed to say. Well, I'm not sure. But it was a school bus altercation. They both got kicked off the bus for three days. The school system did not suspend my client, didn't expel her, didn't put any protective measures in effect. She was simply returned to the general school population, suggesting that, at least in the eyes of the school system, this was not a serious offense, or at least my client did not present any danger to anybody else. In fact, when she was interrogated on the 9th, three days later, they had to get her out of class to question her. So, on these facts, the jury quite reasonably could conclude that this was not regarded by the schools, at least, as a severe offense. When you look at the second factor, which is what, if any, danger the suspect presents to the arresting officer or to the public, what you see is the following. You have an 85-pound, 4'4", 10-year-old girl in an office with the door shut, with three adults present, one of whom is a deputy sheriff who is 5'4", and outweighs her by 60 pounds. There is no evidence in the record that she resisted or made any threats or was in any way uncooperative. Well, the record is, though, that she was sort of non-repentant, sort of obdurate, maybe is the word. I think that is an accurate characterization, Your Honor. And, in fact, I think the deputy said in her affidavit that that was the sole reason she handcuffed, well, the principal reason she handcuffed her. She was doing what, I guess, the Fifth Amendment allows you to do. She didn't have to confess. You're required to be recalcitrant. I mean, that's what freedoms are in America, right? I mean, you apologize, but right. Is that right? I think that's right, and I think it is. It's like I always thought about when judges say, well, did they cooperate? That's really objectionable. You don't decorporate. Otherwise, punish somebody for not confessing that they did something. Right. Yeah. Go ahead. I just want to be clear. One of my questions wasn't whether she was cooperative or not. I understand. I think that at least the evidence put forth by the officer is the officer thought, I don't want, maybe she had an attitude. Right. That plays into it that she thought contrasted completely to how she acted later. It was my point. No, I would agree with your point, Your Honor. I think the deputy was pretty explicit in her affidavit in saying that my client took the position that the other girl started and that she wasn't sorry. And instead of saying, well, go to the blackboard and write, I won't do this again 100 times, she instead decided to put handcuffs on her to produce, you know, remorse, and it was very effective. But certainly focusing on- She didn't put, but she didn't say she put handcuffs on her to get her to apologize. Didn't she say she put them on in anticipation of transportation? Well, actually, if I might, forgive me, but just consulting her affidavit, the deputy said that- You'll be back up. I don't want to- Right, so I don't want to- I thought the record is she did it to transport her under the policy. Right. The policy that doesn't completely control, but later she said she, after I did that, basically getting ready to transport her, and I was a little concerned because of the way she was acting as for transportation, that then she just, which I certainly understand a 10-year-old girl sort of crying and saying, I'm sorry, she then said in response to that, basically she changed her mind about what to do. I know your claim is she did it just to get the confession, but I don't think that's what the officer suggests she did it for. I, forgive me for reading while you were talking, but I just scanned the affidavit, and she says explicitly that as soon as remorse was demonstrated, she decided, I'm not going to take her into custody. I'll release her to her parents, took off the cuffs. That's paragraphs 13 and 14. Right. But I now agree with you. In my view, she implies, but you're right. She doesn't say explicitly that I did this to produce remorse, and she did reference the policies of the department with regard to juveniles, and the policies were attached to the affidavit. Let me ask this. Do you think, is your, by the way, let me say this. Yes, your honor. The optics on all of this to me, they're terrible. You think about a 10-year-old child being handcuffed. That's not a good thing. Right. Doesn't mean it's unconstitutional, necessarily. But do you, is your concern that she used the handcuffs, or that she used the handcuffs for an improper motive, or both? Both, your honor. OK. As I understand the constitutional analysis, the reason, that using handcuffs, as any use of force, has to be justified by these three factors, the severity of the offense, whether there's any danger presented to the officer or others. And thirdly, whether there's a fight or flight risk. And I, you know. What about for transportation, though? What if there's, that's what the policy is, just for safety, for transportation. What about that? Well, the policy contemplates the possible use for that purpose. It appears at pages 47 through 48 of the record. And what it says is, well, you look at the same things the Constitution tells you to look at, according to the Supreme Court. You look at physique of the arrested juvenile, reputation for violence, conduct at the time of arrest, any arrest record. It says a- Could this be bad? I'm not saying that it is. But could it be bad judgment, which falls short of the constitutional knowledge? It could be. But I submit that it isn't. Because when you apply this Fourth Amendment analysis prescribed by the Supreme Court, Deputy Dole gets his conduct flunked on all three points. Severity of the offense doesn't warrant this. She thought it did, though. But you just think objectively she couldn't think that. Right. It's an objectively reasonable standard. And in the case of C, you're not supposed to look at the subjective thought process. In this record, there's no indication that they thought they needed Cuff to control her? No. None whatsoever, Your Honor. And in fact, I think in our early exchange, Judge Wynn established that this happened for a grand total of maybe two minutes. And it occurs to- Oh, I didn't establish that. Oh, I'm sorry. You said that. Oh, well, I'm sorry. I'm sorry, Your Honor. I'm sorry. I'm all discombobulated here. I apologize. He asked the question how long she was handcuffed. Right. Right, sorry. But it was two minutes. According to the deputy, it was two minutes. I'm not aware of any, you know, contraindications to the record. So we'll assume it was two minutes. And it occurs to me, well, if there was a sufficient risk presented by this ten-year-old to warrant handcuffing, how could it vaporize in two minutes? In fact- She suggests, either expressly or implicitly, that it was the change of attitude that she saw. Right, yes, she said- The little girl was, you know, I'm using my word, obdurate, or she, and it concerned her, she basically said, and once I decided to transport her, I handcuffed her, and then she just basically sort of became a little ten-year-old girl crying upset, and that's when she went, I changed my mind on how I was going to do it. That's exactly the way I read it. But I would point out that, you know, again, when you go through this sort of three-part analysis prescribed by the Supreme Court- You just don't think he can be justified on any grounds. Oh, no, not on any grounds. And, you know, you see three adults, a small room, a ten-year-old child, I mean, what's she going to do? I mean, where's she going to go? So this is the way I'm seeing your case. You spend a lot of time here arguing whether this is a constitutional violation. Right. And you're probably getting some force with it. But the Supreme Court has made clear, we don't even have to look at that. We can assume that and go straight to that second one, which is whether this is a clearly established violation. Yes. You don't have a case in the Fourth Circuit in Maryland. You don't have one in the United States Supreme Court that actually deals with this situation. I can't find a hand-cuffing case. And so when you get to that situation now- Right. I'm not forecasting too much, but I believe what we're going to hear once we stand up is a lot of clearly established stuff that's getting ready to be talked about here. You spend a lot of time on constitutional law. Right. Which I'm okay. Spend it all you want to on it. But the way these cases have gone- Right. This is really a case that should focus on a clearly established problem with this. Agreed. As to whether this officer, who's in there and she sees what appears to be, some have described as a pretty violent assault. Right. Because Shedd says fifth grade versus third grade. That might not sound like it's significant, but it does sound pretty significant to me. They're both fifth graders. They're both fifth graders. That's what I thought. I want to get that fact together. They're both fifth graders. They're both fifth graders. I thought, Counselor, you should know that. You're right. You're right. But you see where I'm going? When you come back up, I think you ought to spend some time talking about this clearly established problem of this case. Right. Because, you know, I think it's a difficult case. It is, as Shedd pointed out, no one is going to think very kindly that any officer a 95-pound, 4-foot little kid that breaks out crying as soon as you put handcuffs two days, two or three days after this has happened. Right. There's not a whole lot of danger in that room. So, I mean, that's bad. Right. But the question that comes up is, and we've had some bad cases, is even if it is bad, is it clearly established with this officer who's in there, called there by the principal for a situation? Because otherwise, the principal would handle it. Why would you call the police in? Right. And you call them in, and the police have some function. Clearly, there's been an assault. There's no question it was an assault. Clearly, you can arrest for an assault. No question about that. The question is, what degree of force was used? Right. And was it minimal? And the handcuffing, in and of itself, left not one injury on the child. Right. So, that's... You've got extra time, I know. I don't think Judge Greger can permit you to go further. For my benefit, but I'm saying, when you come back, you might want to use some of the... Let me say, too, now. The record will be, we'll get it figured out. But in the officer's affidavit, she says, in paragraph three, the attacker was a fifth grader. The other student was a third grader. Right. So, I don't know, but I knew I'd seen it somewhere. Right. Well, maybe we'll... Our allegations were that they were two fifth graders. And I will confess, Chief Judge Greger, that what I should have done is followed a counter-affidavit, saying, no, no, no, they were both in fifth grade. I don't know. I don't know, Vassar. How would you know where from the record I got it? My fault. But if I might briefly respond to the question about my position on qualified immunity. Yes, you may. Thank you. The Fourth Circuit has, to my knowledge, never applied the Fourth Amendment in this fact scenario, handcuffs, children, and so on. Nor has it ever dealt with a case where the officer took Billy Club and whacked E.W. or somebody like that. Or I could go on and on, pepper spray. It's not required to have the exact case, is it? Precisely. My point, respectfully, would be that the analysis is clear-cut. And the Ninth Circuit, they did it with a very similar scenario, this case that I kind of touted in my brief, which is C.B. versus City of Sonora, 2014 case. And they said, as a matter of law, that the officer doesn't get qualified immunity in this scenario when you're dealing with a juvenile who's compliant, who doesn't present a safety or flight risk. And it's, I won't say a no-brainer, but, I mean, it's really hard for anyone just to apply common sense, much less constitutional jurisprudence, to see why it would be okay, under these facts, to handcuff a little girl in the principal's office, who immediately bursts into tears. So, thank you. Thank you so much. Of course. Mr. Breeds? Chief Judge Gregory, members of the Court, John Breeds, on behalf of the Appley Deputy First Class, Rosemary Dulgos. Following up with Judge Wynn's line of questioning. Tell me how you want to approach this. Do you think this is a case, I mean, do you want to spend time talking about the constitutional violation? Yes. Or do you think that clearly established wrongs is really a good place to hang this one? I do. And I do that in light of what Judge Motz did. And I think his approach was appropriate in finding qualified immunity available to the officer, at a minimum, simply because there is no... But he said that after he said no violation. Yes, he did. So, and he asked you an alternative question. Do you want this or that? And you went, yes. Yes. But which are you going to argue, mainly, is the question he's asking. I guess what I'm saying is, if you read Judge Motz's opinion, he finds qualified immunity. So, I'm basically reaching out here on the grounds of qualified immunity. But he found no violation. And then he adds, as well, no qualified immunity. He basically says in the order, she is at least entitled to qualified immunity. I read that as meaning, if there were a violation, she would still be entitled to qualified immunity because of the absence of clearly established precedent in this circuit or in the Supreme Court that prohibits the handcuffing of a juvenile. No, but just wait one second. Yes, Your Honor. His order says, E.W. asserts claims for the use of excessive force in violation of federal and state law. Yes. However, on the facts as stated, no excessive force was employed. That's no constitutional violation. He then later goes on to say, as to the federal claims, she is at least entitled to qualified immunity. But it doesn't really matter. But I don't think it's fair to say, his ruling appears to me, he stated first, no excessive force. You're correct. That would mean no constitutional. Then he goes, but in any regard, certainly it's qualified immunity. You're correct, Judge. That is the language that he used. I'm taking Judge Wynn's predicate and saying that, if we're looking at qualified immunity, yes, just as I urged below, there was no clearly established precedent at the time of these events, or even now, that would have prohibited Deputy Dalgos from effecting an arrest of a juvenile in a school setting. You can assume a constitutional violation. You can assume there was a constitutional violation, but it's not clearly established. Correct. So we could even make that assumption. But the question would be, is the law settled? Was the law settled at that time? And the answer is absolutely not. There is no precedent in this circuit that prohibits the deputy from making an arrest of a juvenile in a school setting upon probable cause. That's what she had. And if you look at her affidavit, and this is in paragraph nine, where she says, based on all of the information, including viewing the videotape of the attack, I had established probable cause and decided to take E.W. into custody. I exercised my discretion per departmental procedure and handcuffed E.W. Departmental procedure makes juveniles taken into custody for criminal-type offenses subject to the same security requirements as adults. There is nothing to show that clearly established law had deemed that conduct to be objectively unreasonable under the Fourth Amendment. We may disagree, in hindsight, as to the officer's approach, but certainly nothing in the law compelled her to act other than what she did. Let's take the argument. Let's say the girl was four years old. You would say that wouldn't be clearly established either. I would. What I would say... Your argument would be the same. It would be the same, except that the deputy, if she had been confronted with a four-year-old, a five-year-old, a six-year-old, that certainly would have come into the decision-making process. Simply because she would have been required to make an assessment as to whether or not the child even could understand the criminality of the conduct in question. You are walking yourself into a situation that... I let him walk. It could have been a six-month-old baby that they decided to do it to. That's not exactly where you want to go with that. Yes, he does. He's answered my question. He's answered... I follow what you're saying. You're saying there has to be an assessment, doesn't it? There has to be an assessment. And it's assessment of those three factors, isn't it? No. Is none? No. What would it be? When you're dealing with juveniles, there is a case in Tennessee where the arrest was of an eight-year-old. And the court points out, just as in Maryland, there is no law that sets a minimum age for which someone can be arrested. However, I think it's just... You're saying that once you can arrest someone, that automatically means you can handcuff them. Is that right? It seems that's the logic where you're going. I'm saying that under Fourth Amendment law, you have the discretion as an officer to handcuff an arrestee. Right. And that's anybody, including a four-year-old. The officer has the discretion. This was not a case of a four-year-old. This was a case of a ten-year-old. There's no difference, though. Here's the point. That's why the analysis, there's no difference. The only difference is a number. Because here, this was not in the race gesture of the crime. Correct? It was three days later. Right? Correct. The little girl had gone to school two days afterwards. She was in there. They call her into the office. Three adults are there. What makes the facts any different than a four-year-old in terms of control, threat, any of that? What makes the difference? Again, we're not dealing with a four-year-old. What's the difference? I'm talking about the analysis. What's the difference in terms of how does it heighten under those three prongs the reasonableness of handcuffing her other than the age? Is there any difference? I think it's an incredible sliding scale. If we were here talking about... I'm not sure that's what it is. You need to look at the Purcell case. It's really a question of whether it is an obvious situation. When you get it in the realm of four years old, six months old, it becomes obvious. I'm not sure what your argument is going on there. That is the case. That was the eight-year-old. The court was pointing out does there come a point where a child is simply too young? You can't look in the common law for an answer to that. Arguing about a four-year-old or a 15-year-old. We had a 10-year-old. It's absolutely fair to ask you questions about a two-year-old or a four-year-old because he's teasing out your view of qualified immunity. That's completely acceptable. That's what we do. It seems to me you weren't really ready to answer that question. Would it be objectively reasonable to handcuff and arrest a two-year-old? You have to explain to us why you think it's not under your approach to what's clearly established. That's exactly the point. I'm not saying which side will come down but that's what the Chief Judge was trying to get you to sort of explicate for him. I think what I'm trying to say  Courts have never said there is a certain age for which the individual isn't subject to arrest. However, if you're dealing with a child that's 5 or 4 or 2 or if you're dealing with a mentally disabled child all of these circumstances would be taken into account and if I were here Taken into account for what? The discretion the officer uses or the Constitution? The Constitution. Whether or not that would be objectively reasonable and to place a 2-year-old or a 4-year-old in handcuffs I would suggest that you would have a strong argument that that was not objectively reasonable. I understand. So you don't think the same thing you did you winced and you said 4-year-old you don't think that's just as severe as dealing with a 10-year-old under these circumstances it's different. I agree. If it was a 10-year-old the fight is going on they just broke up the race just died she's fuming and then 10-year-old but that would be something in the fact you would consider but here the little girl is at school three days later and because and what she's doing I think this is a dangerous case because you won't confess and tell us what you well you winced but this is equity because you won't just go off and fall out and the girl said listen the girl kicked me and I defended myself I don't see anything wrong with that and I must admit in terms of being in America maybe in another country they don't have similar rights you don't have to fall apart you say yes I did get in a fight with her she kicked me that's why I did it but I wanted to say oh my goodness yes you're here so I did everything wrong then you wouldn't be handcuffed if you had acted like we wanted you to act that's what makes our constitution so brilliant the point is this the real definition of freedom is not to act like people expect you to act that's the definition of freedom otherwise you get handcuffed unless you and in this case it was dangerous because they took them off after the girl went into tears now you're acting like a ten year old I'm going to take the cuffs off of you your honor what I would say in response is that if the deputy had acted as the deputies did in the city of Sonora case cited by the appellant in Alexander vs. Bostic I would agree with you in Sonora it was an 11 year old child with ADHD who had accommodations in place at the school to deal with the condition the child 11 years old wasn't suspected of any criminal activity and yet the child was handcuffed for 35 to 40 minutes placed in a police car never spoken to by the officer taken to a relative and released here this officer acted based on probable cause of a crime second degree assault in a fight with a girl on the bus your honor the video I don't know how many people would have gotten out getting in a fight means you're going to be arrested I'm glad it wasn't like that even as terrible as the times were growing up that that was the rule that that was a crime in a fight with a girl who kicked her your honor if you look at the record I did look at the record I looked at the video I looked at it several times if you look the child who I'll describe as the victim didn't kick anyone according even to E.W. what she did was step on her shoe and for that she was attacked not once, twice with hands and feet on the bus we don't have jurisdiction you just disputed that that's in the record your honor the record the girl says she kicked her didn't she she says she stepped on her shoe or she didn't say she kicked her no your honor it all was about she stepped on my shoe the other child denied it and for that she was attacked viciously as you can see she says she stomped her foot stomped her foot but if you look at the video there isn't any of that what there is is simply a child sitting in a seat who is attacked and not resisting in any way fighting back that's what the record shows well let me just stop you for a second I watched that video I'm not saying this is my prerogative to do it that wasn't a vicious attack not by my estimation maybe you can say that I don't get to make that call she did slap maybe kick at the other little girl I don't think that was that just sort of didn't meet my definition of vicious maybe you can say that I don't get to decide that but I think if viciousness is required for your argument we might have a discussion about it but I won't say that I don't think that attack was vicious it was a quite frankly I think it was a slapping kick fight between two little girls that's what I think it was number one but I guess maybe that washes out there's no claim that there was a probable cause there is not do you think that washes it out that issue is off the table as to the reason for the seizure itself we're limited to the handcuffs I was just challenging your definition I would say I would say in response that the charge was second degree assault which in Maryland doesn't require viciousness I didn't say it did that's how you were describing it and that's my characterization of what I see but obviously all of us are free to disagree but what is required is physical injury and unlawful touching the deputy documented that and then made the decision to handcuff what are we to make of the fact that she so quickly took those handcuffs off the little girl two minutes into it she took them off what do you say about that I call it an act of compassion she could have kept her in handcuffs pursuant to the fourth amendment pursuant to departmental procedure it's not as if she took the handcuffs off and said I'm not punishing you any longer you're free to go she made the decision in consultation with the vice principal reached out to the child's mother explained that she would treat the matter now as non-custodial and that's what she did released the child to the mother contacted juvenile services directly with the paperwork it was an act I think that shouldn't be punished what was the justification for the handcuffs in the first instance what was the justification from the record from the record again I go back to paragraph 9 really the only yes I actually you may excessive force requires you to be injured I'm sorry your honor excessive force requires you to be injured in the force itself the handcuffs no requires injury I think it is accepted that an officer has the ability to utilize handcuffs in the course of an arrest under the fourth amendment if there's probable cause if the officer uses those handcuffs in a way that cause injury or is designed to inflict pain then you would have a violation of the fourth amendment no evidence of anything other than tears and saying I don't want to go to jail I won't do it again there was no physical injury you're saying it would require physical injury yes yes otherwise you would have an excessive force claim anytime someone claimed emotional trauma from being handcuffed pursuant to an arrest for which it was probable cause your adversary said that I asked him those questions he said the excessive force claim here is based on the use of the handcuffs correct yes and again we come back to that issue that judge winds started off with it is not clearly established today but I want to interrupt you I want to follow up on the line I asked you why the handcuffs were used yes I thought as I read the facts I thought part of that was she would take her into custody and I thought there was some concern she didn't use this word and I don't mean anything by it other than her kind of being obdurate or attitude I don't want to overstate that maybe I'm wrong it's the following paragraph in the affidavit where the deputy testified that she was concerned for the physical safety of all persons present she had observed the child in the video physically attack another student on a moving bus the child seemed unconcerned by the seriousness of what had taken place and what might occur the deputy believed there was a possibility that the child could physically act out against her or anyone else nearby as we left the school to reach the patrol car she was the only deputy present this was a ten year old fifth grader so I see I see when the policy is you may use cuffs she then explains her justification for doing so yes correct your honors my time is running short but I want to come back to I think a very essential point made by Chief Judge Gregory and I don't want the court to come away thinking that I believe that the handcuffing of a child in a school setting or otherwise is something to be taken lightly I do not I believe it requires incredibly close scrutiny under the fourth amendment in cases like CB vs City of Sonora in Alexander vs. Bostic the 11th circuit case 2006 where the deputy used the cuffs by pulling the child's arms behind his back and saying this is how it feels when you break the law this is how it feels to be in jail even though the child had done nothing nothing in the way of a crime he can't do that you can't do that I agree but is that really establishing the fourth circuit maybe you can maybe you can if that's the standard you can it's not establishing the fourth circuit the different chair your honor and I think you can look at other circuits and there are cases that talk about that but that's another matter but I'm glad you brought that up because you know what in terms of an American called the school to prison pipeline that is what used to be like the water fountain you push somebody now call the police and these kids get jacketed with records in detention early on and it puts them on an incredible trajectory and it talks about handcuffing the impact on it there are studies that talk about poor performance to say two minutes for a kid ten year old handcuffed that does not traumatize them it's almost like well you used to it it's about two minutes no these are children they're tender just like anybody else's children and I think people would be outraged outraged in suburban areas that their children what do you mean how do you handcuff a ten year old and I think we take some liberties and say oh it was just two minutes she started crying that is traumatic for a child it has an impact on their academic ability and you call the police and you say the police thought there's going to be some danger here that she was going to swing on me and there are no facts to even support a conclusion like that otherwise if that's the law you could say the person acting calm I know they're calm now but I just know in a minute it's going to go off what would be the standard your honor the standard is probable cause and that's what this officer had is it a felony no your honor so it's misdemeanor allegedly occurring outside the presence of the officer yes and in Street vs. Serdica this court in 1974 held that there was no presence requirement appended to the 4th amendment this court has reaffirmed that position as recently as 2008 the issue of presence has long since been waived but under the 4th amendment it's not required the difference between this case talk about the concept the reason I said presence because I'm trying to give some what's this conclusion there was a present and clear danger I don't know where that's coming from other than the fact that she just didn't act like she didn't present I think it was called an attitude that officer never used that but what was the word she I'm reading let me go back to her how did they describe what the girl was doing other than sitting down in the room she said that she didn't seem to realize basically that there was anything wrong with what she had done that the juvenile the 3rd grader stepped on my shoe so I kicked her and started to hit her when I asked the E.W. how many times she said she didn't know but said more than 5 so basically what she told the deputy was I didn't do anything wrong and she asked for what she got so the deputy didn't say that was an attitude or something that needed correcting so that didn't play at all in terms of the handcuffs right I think that would be a mischaracterization that was a question I didn't characterize anything I think it went in to the totality of the circumstances informing her discretion to exercise in this case to use handcuffs on this juvenile that is the key difference between this and the cases where handcuffs are used to intimidate and punish those cases that have been found to be in violation of the 4th amendment the officers were not acting on reasonable suspicion much less probable cause and that is the difference here thank you thank you Mr. Breed you have a few minutes left what the departmental policies say and I quote the vast majority of juvenile offenders are likely candidates for non-secure custody and positive diversion and intervention strategies I'm quoting from page 39 of the joint appendix and then as Mr. Breed says you know the policies do go on to say that you have the discretion to handcuff juveniles and I'm now looking at page 47 through 48 of the appendix but it says you know you do all the things the supreme court says you're supposed to do you look at the physical safety of the persons involved, you look at the physique of the juvenile, reputation for violence, conduct at the time of arrest, in short what I suggest are very well established 4th amendment principles are actually codified in the departments own policies the deputy says she was an 18 year veteran she'd spent 12 of those years as a school resource officer so she would have imbibed this jurisprudence through reading her own policies which she attached as an exhibit to her affidavit so certainly in my view it was not established as a matter of law that the deputy had qualified immunity I think that remains an open question and I would ask that this court remand the case with instructions that the case proceed with the district court and I thank you for your time Alright, thank you very much
judges: Roger L. Gregory, Dennis W. Shedd, James A. Wynn, Jr.